We'll hear the next case, CVR Energy versus Wachter Lipton. Mr. Bagel, you can proceed. I think you're muted. Mr. Bagel, we're not hearing you. Can you hear me now? Yes. I'm sorry, I apologize. This case, this appeal involves three straightforward issues. Although in the course of the seven years of litigation, the facts are somewhat complex. But in my limited time today before your honors, I will concentrate on the major issues. The three issues is whether the district court was correct in granting a 12C motion for judgment on the pleadings without leave to replete except for one minor aspect of the plaintiff's malpractice claim. The second issue is whether or not the court improperly granted the 12C motion with respect to this secondary issue, which involved the SEC filing and the claims of malpractice, which was allowed to be amended by the district court. And the third issue is whether or not the plaintiff's request for leave to amend the complaint to add a breach of contract and breach of the implied covenant of good faith and fair dealing with respect to the fee arrangement between the plaintiff and Wachter Lipton was properly denied. What all of these three issues come down to, your honors, is the timing and the context of the 12C motion that was filed by the defendant. The litigation was originally filed in 2013, and it was not until 2018 after virtually the completion of all fact discovery, which involved 19 depositions and the production by plaintiff of over a million pages of documents to Wachter Lipton. And instead of what one would normally expect at that stage of the litigation by way of a defense motion for summary judgment, defendant chose to file a motion for the judgment of the pleadings. Significance is that the only prior response of pleading to the plaintiff's complaint was an answer by counsel, by then counsel of the defendants. So there had been never any challenge to the sufficiency of plaintiff's complaint until 2018, when, as I said, discovery was virtually completed. Notwithstanding that, the court granted the motion for 12C judgment of the pleadings, finding that the plaintiff's complaint stated no plausible cause of action for malpractice. But in the course of its decision, it raised, it made judgment calls, the court made judgment calls, finding no factual disputes and that the complaint allegations were insufficient as a matter of law. Yet the court never granted. Excuse me? Is there any ambiguity in the engagement letters with respect to when the sale transaction fee would apply? Yes, there is ambiguity for the following reasons. There's ambiguity for a technical reason with respect to the wording of the two engagement letters. There was one with Deutsche Bank and one with Goldman Sachs. And there's ambiguity in the failure of both. There was no ambiguity in this case. Well, the background of the ambiguity has to do with the state court decision finding that the contract was clear on its face in giving both the banks the right to a success fee based upon enterprise value. But that was not the basis of the summary judgment that was found by the state court in the case with the banks. The basis for that summary judgment was ratification. Later on, the federal court, the state court dismissed a malpractice claim based upon collateral estoppel on the basis of ratification. But the Supreme Court of New York, the appellate division of New York threw out that dismissal. And so the federal case was thereby reinstated because there was no longer race judicata. But the ambiguity issue, Your Honor, is somewhat of a collateral issue. Because the issue of malpractice is not really ambiguity. The factual issue is that discovery revealed that Lockhell Lipton had no idea, even though they reviewed and they redlined the engagement letters, they did not know themselves that a success fee would be awarded in the event that Mr. Icahn achieved control of the company. More importantly, at the time that Lockhell Lipton informed the board of directors that upon the sale of the company, the banks would be entitled to a success fee, there was no engagement letter that said any such thing. All there was was a one-page bullet point memo, which Lockhell Lipton had, which simply said upon sale of the company, there would be a success fee. Now, Judge Sullivan, in his Rules 12C granting of the motion, he found that no reasonable listener could possibly believe that a change of control doesn't constitute a sale. I would respectfully suggest that's a factual finding, which Judge Sullivan ignored all of the facts in the case because it's a judgment on the pleadings and he didn't have any access to the discovery of the case. Had it been a summary judgment, the judge would have been aware that Lockhell Lipton had no basis to believe that sale of the company meant a change of control. Lockhell Lipton is a sophisticated firm. It certainly knows the difference between a change of control and a sale. The success fee was triggered if just Mr. Icahn and the tender offer received just 51% of the stock of CBR Energy. In addition, there is deposition testimony by the lead board member of CBR's board of directors that he had no idea and did not assume or believe that a sale meant a change of control. Had he known that a change of control to Mr. Icahn would trigger the fee, he would have not approved the success fee arrangement that was in the second engagement letter that was never explained by Goldman Sachs and Deutsche Bank. It was never explained by Lockhell Lipton to the client. So this was a perfect storm of negligence on the part of Lockhell Lipton. Now, it's a fair defense that one reading the contract in retrospect should have realized that the definition of a sale actually included change of control. But the facts in this case indicate that Lockhell Lipton, who was paid $6 million to represent CBR in all aspects of the retention and all aspects of Mr. Icahn's attempt to take control of the company, was negligent in not noticing that fact or informing the company of what this fee agreement actually said. And the court, however, Judge Sullivan, however, decided that, as I said, that anybody listening to Lockhell saying sale of the company, they would know that means change of control. And I respectfully suggest that's an assumption of fact that should not have been decided on the proceedings. And even if that's what Judge Sullivan believes, he should have at least granted leave to re-plead. The Second Circuit has consistently said that it prefers cases to be decided on the merits unless it's clear on the face of the complaint that the allegations are insufficient based upon timely and equal. And I would respectfully suggest to... Mr. Bigelow, you're out of time. Why don't you finish up, please? You have some rebuttal time. Yes, so in conclusion, I think it's fair to say that under the Second Circuit law, there has been no case, none whatsoever, that the Second Circuit has ever refused to grant leave to re-plead on a first attempt to challenge the sufficiency of the complaint. The only case cited by defendants, as I pointed out in our brief, is completely distinguishable. Thank you, Your Honors. Thank you. We'll hear from Mr. Schuster. May it please the Court, Michael Schuster for Wachtell Lipton. The District Court twice determined that CBR's pleading failed to state a claim of malpractice and denied CBR leave to amend its pleading. CBR has not identified any error in those decisions, let alone one that would justify reversal. The District Court properly dismissed the untenable bank fee malpractice claim and denied CBR leave to amend it further. Properly denied CBR's 11th hour request to add new contract claims. And after giving CBR a second shot at pleading, the Court properly dismissed the SEC disclosure malpractice claim. What Mr. Beagle called today a minor claim. Let me start, if I may, with the bank fee malpractice claim. Can you answer my question that I put to opposing counsel? Is the issue of ambiguity foreclosed now, or is that open? The issue of ambiguity, well, two things. One, Judge Sullivan, of course, found that the letters were clear on their face. His Honor also said that CBR was collaterally estopped from arguing otherwise because Justice Sherwood had made the same finding in granting summary judgment to the banks against CBR on the basis of the letters. And so, CBR is now, in the view of the District Court, is collaterally estopped from arguing that the letters are not clear. CBR, Mr. Beagle focuses on the denial of leave to amend. The District Court carefully considered CBR's pleading of the bank fee malpractice claim and CBR's amended complaint. The District Court determined that CBR fell far short of pleading malpractice, that the claim had fatal deficiencies. When you just take a big picture look at the case, CBR hires the two investment banks to fight off a takeover. It does seem odd that those efforts fail, and yet they wind up earning a $36 million fee. Is that what the client intended, what the parties intended? I think it is what the parties intended, so let me walk through that if I may. First, Justice Sherwood, looking at that issue, said it's not at all unreasonable for the investment banks to receive a success fee or fees that are a percentage of the sale of the company. The bank engagement letters themselves make it crystal clear that the banks receive a fee. One fee if the company stays independent, another fee if it is sold. That is common and it makes sense because the board and management have fiduciary duties to shareholders. It is not proper for them to hire an investment bank just to fight off a takeover attempt. They have to do what is in the best interest of the shareholders. They have to see to it that shareholder value is maximized. It is commonly understood that the investment bank's incentives are lined up with those of the shareholders. That is why the fee is potentially lower if the company stays independent than if it is sold. The investment banks could end up selling the company to the first offeror but at a higher price or on more favorable terms, which is what happened here. Or some other company could come along and want to buy CVR at a higher price. The investment banks were engaged to pursue all of those scenarios. That is what is crystal clear in the letter. Let me ask you about the SEC claim. You are saying now, it sounds as if you are saying something like, well this is ordinary, customary. But SEC said this isn't customary. One of his claims is from malpractice based on representing this was customary. Are you saying now you are disputing that it is customary? I am not disputing that it is customary. You are disputing that it is not customary. No, we accepted for purposes of our motion to the district court and we accept for purposes of this appeal that the description of the fees as customary was wrong. We don't obviously ultimately accept that but we are not contesting that on this appeal. But the question is not whether Wachtell Lipton made an error in describing the fees as customary in the SEC disclosure. The question is whether it fell short of the prevailing standard of care in doing so. Lawyers aren't held to the standard of infallibility and it is not enough to plead malpractice to plead that a lawyer made an error in judgment. What the district court found and it gave CVR two attempts to do this. What the district court found is that CVR was unable to allege any reason why Wachtell Lipton should have known when it advised CVR to describe the fees as customary that that was wrong. The district court said even after getting a chance to replead at the conclusion of discovery with the benefit of the whole discovery record, CVR didn't allege why Wachtell Lipton should have known describing the fees as customary was wrong. That anyone at Wachtell Lipton believed the other way or that what it should have had reference to in concluding otherwise. Your idea of a proper complaint in this case would be under the reasonable standard of care would not have under that standard. They would have not said that. I mean, what do they have to say to make a good claim? They have to the prevailing standard of care for lawyers is the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession. Well, if they had put in a conclusory statement that this is below the standard of ordinary care, that would have been sufficient. That is what they did, and it's insufficient. They have to allege some fact, something. Why not merely that Wachtell Lipton made a mistake, but why it was unreasonable to make that mistake under the prevailing standard of care? Some reason why Wachtell Lipton should have known that describing the fees as customary was wrong, was mistaken. And they have not alleged any fact, not a single solitary fact that establishes that. So their complaint is purely conclusory on the point. And they pled the claim. They were given leave by Judge Sullivan to replead the claim. After the close of discovery, they should have been able to throw in any facts they had. And their complaint is utterly bereft of any facts that are non-conclusory that make out that Wachtell Lipton should have known at the time it rendered the advice, which is the relevant time period for evaluating it, whether that describing the fees as customary was erroneous. If I may, quickly, on the subject of granting leave to amend. So, CVR was granted leave to amend its SEC disclosure malpractice claim, and I've just discussed that. CVR sought leave to amend its bank fee related malpractice claim in its opposition to Wachtell Lipton's Rule 12c motion. And it set forth the material that it proposed to add. Judge Sullivan considered that request for leave, which is, CVR's brief is at page 45 of the joint appendix, and it has a stand-alone section seeking leave. And Judge Sullivan simply found, the district court simply found, that what CVR proposed to add did not address, let alone remedy, what the district court called the fatal deficiencies in the complaint. This court affirmed a dismissal of a complaint and denial of leave to amend in virtually identical circumstances in the F5 capital v. Pappas case. And just finally, I'm happy to go over, but I don't want to, so just one last point. Mr. Beagle says our motion was made five years into the case. This case was dismissed on res judicata grounds and reinstated in 2017. And we made our motion, it was reinstated in July of 2017, and we sought leave to make our motion in December of 2017, and made our motion in January of 2017. Discovery was still very much ongoing in the case. I refer the court to page 299 of the joint appendix for the scheduling in the case. And with that, we'll rest on our briefs. Thank you. Mr. Beagle, your rebuttal. Yes, very briefly, because I don't have much time. Listening to Mr. Schuster, he misses the essential point of the SEC claim. The fact is that the first 14D9 was drafted by Walco Lipton and filed on March 1st before there was any fee arrangement whatsoever with respect to a success fee. The only fee arrangement at that time was a monthly payment of $200,000, which had not yet been billed to the client. There was a tender offer and a discussion by CVR with Goldman Sachs as to what the arrangement would be for defense of the tender offer. And there was this bullet point memo called the rate defense. But there was actually no engagement. So when Wachtell filed this, drafted this March 1st 14D9, and said it was usual and customary, they could not have been referring to the fee engagement that had not even been entered yet. And then they repeated this in April, usual and customary, after they figured out that the success fee would be triggered by a successful tender offer and obtain 50% of the stock. The district court's decision that, oh, this was a matter of judgment, implies that there was a choice between usual and customary and unusual and not customary. The fact is, this was not an error of judgment. This was simply a miscalculation and a negligent mistake by Wachtell because the SEC clearly found it wasn't usual and customary. Secondly, the plaintiff here was never given a chance to amend its complaint, which is bizarre and contrary to established precedent in the Second Circuit, as we cited on our brief, in which the plaintiff should at least get one chance to amend. Had there been a 12B6 motion in the first place, instead of an answer, which is the standard of 12C is the same as 12B6, the district court would have been obligated to give leave to amend when there are factual matters that could be addressed. Did you not have an opportunity, or did you not essentially make your request for leave to amend in your opposition? On a footnote, in our opposition to the 12C motion, we stated in the event that the court found any deficiency in the complaint, and we had no idea at the time what those deficiencies might be, we would be happy to address them and give some examples of additional facts. But what the court did when it granted the 12C is that it made a reference to our example facts and without even discussing them said, oh, they don't change my mind. It's incomprehensible after millions of dollars spent litigating the discovery in this case, defense counsel woke up one day at the end of the discovery and said, oh, let's try a 12C motion instead of a summary judgment. There's a plethora of facts here. In late discovery, in this case, we obtained from Wachtell the SEC testimony of the partners of Wachtell Lipton, who admitted that their fees were calculated in a way that was different from the engagement letter. They basically conceded that there was nothing unusual on customary. The principal partner in charge of the representation of CBR testified in his deposition that it never occurred to him that the banks would recover fees in exchange for change of control. Wachtell's own lawyers who reviewed the engagement letter in April at first thought the banks would not be entitled to a 12C. The ambiguity argument is a red herring because the point of the ambiguity argument is not that the contract was unclear. The fact is that these sophisticated lawyers who charged $6 million for their knowledge and sophistication in this business never occurred to them that this kind of perverse fee arrangement, which is what a Wachtell lawyer called it, would be acceptable. And to argue in defense of our case that, oh, the client should have known, but Wachtell itself didn't know, is turning everything upside down. So I respectfully submit to the court that this case, with its long history, the plaintiff is deserving to have a fair evaluation by the district court on the merits, including the material facts of Houston's discovery, and 12C should not be used to frustrate that established policy of the Second Circuit. Thank you. All right. Thank you both. The court will reserve decision.